AMY J. GREER
KINGDON KASE
TAMI S. STARK (TS-8321)
COLLEEN K. LYNCH
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
701 Market Street
Suite 2000
Philadelphia, PA 19103
Telephone: (215) 597-3100
Telefax: (215) 597-2740

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER XUJIA WANG, and<br>RUBEN a/k/a RUOPIAN CHEN,<br><br>Defendants,<br><br>and<br><br>ZHILING FENG,<br><br>Relief Defendant. | Civil Action No.<br>07-CV-3715 (AKH)<br>ECF CASE |

## DECLARATION OF DANIEL L. KOSTER

I, Daniel L. Koster, hereby declare as follows:

1. I am employed as a Staff Accountant in the Philadelphia Regional Office of the United States Securities and Exchange Commission (the "Commission"). My primary duties include providing financial, accounting, and securities trading related

support to the Division of Enforcement in connection with the investigation of potential violations of the federal securities laws. I have been employed by the Commission since July 2000.

2. I have personally reviewed, and analyzed, where appropriate, all of the documents and materials identified and described below.

### Background and Parties

3. In January 2007, the Commission received information relating to trading in options on the common stock of Genesis HealthCare Corporation ("Genesis"). My investigation of this trading led me, together with other members of the Commission staff, to the defendants in this action, Jennifer Xujia Wang ("Wang"), Ruben a/k/a Ruopian Chen ("Chen"), and to the relief defendant, Zhiling Feng ("Feng").

4. In addition, our investigation led us to other incidents of trading that have led us to conclude that Wang and Chen have been unlawfully trading on material non-public information. As of today, we are currently aware of three companies whose securities Wang and Chen appear to have unlawfully traded based on material non-public information: Genesis, Glenborough Realty Trust ("Glenborough"), and Town and Country Trust ("Town and Country").

5. From information available on the internet, as well as other public sources, and information provided by his employer, we learned that Chen, a Chinese citizen, is a securities professional who from July 18, 2005 until March 17, 2007 was employed by ING Investment Management ("ING") in New York, New York, as a Vice-President of the Fund of Funds Department and head of relative value hedge fund strategies. On March 14, 2007, in response to ING's request that Chen cooperate

with the firm's internal investigation of Chen's trading, Chen refused to cooperate and resigned.

6.   Chen is married to Wang.

7.   From information available from public sources as well as information provided by her employer, we learned that Wang, also a Chinese citizen, is also a securities professional. Since August 29, 2005, Wang has been employed by Morgan Stanley & Co., Inc. ("Morgan Stanley") as Vice-President and manager of the Securitized Product Group, in a group referred to as the Valuation Review sub-department, which itself was a sub-department of the Financial Control department in the Finance Division.

8.   On February 21, 2007, Wang, who is pregnant, alerted Morgan Stanley of her intention to seek medical disability and go on bed rest. On March 14, 2007, in response to Morgan Stanley's request that Wang cooperate with its internal investigation, Wang refused to cooperate and alerted Morgan Stanley of her intention not to return to work following the birth of her child.

9.   From publicly available information, we have learned that Wang and Chen own two homes, one in Queens, New York, the other in Englishtown, New Jersey; that they reside in the home in Queens; and that the home in Queens was, within the last few weeks, listed for sale.

10.  Feng is a Chinese citizen residing in Beijing, China. According to brokerage account opening documents provided to us from Scottrade, Inc., and from Interactive Brokers, Inc., Feng identifies herself as "retired."

11. According to information provided to the Commission staff from Wang and Chen's counsel, Feng is Wang's mother.

**Wang's Employment Gives Her Access to Material Non-Public Information**

12. According to information provided to the Commission staff by Morgan Stanley, in her position as Vice-President and manager of the Securitized Product Group, Wang managed financial analysts responsible for valuing certain assets of the Principal Transaction Group.

13. Because Morgan Stanley owed a duty to maintain the confidentiality of information provided to Morgan Stanley by its clients, in its policies and procedures distributed to employees, Morgan Stanley included policies and procedures mandating that each employee maintain in strict confidence information concerning Morgan Stanley's clients. In addition, Morgan Stanley's policies prohibited employees from using confidential information obtained during the course of employment when trading in their own account, or someone else's account. As part of her employment application, Wang certified that she would abide by these policies and procedures.

14. The Principal Transaction Group lends money to potential acquirers of commercial real estate assets by securitizing pools of loans. Such potential acquirers of commercial real estate assets include Morgan Stanley Real Estate, real estate investment trusts, and private equity firms.

15. Wang's supervisor, in an interview conducted by the Commission staff in which I participated, told us that as part of Wang's duties she had access to

information disseminated to the Global Large Loan Committee ("GLLC") at Morgan Stanley. Wang was added to the electronic mail distribution list on October 11, 2005.

16. The GLLC evaluates and approves large loans, including those involving certain transactions related to purchases made by Morgan Stanley Real Estate, real estate investment trusts, and private equity firms.

17. Information on the prospective deals evaluated by the GLLC group is tightly restricted. Wang was the only member of her unit with access to the information; not even her supervisor had access to the information.

18. The GLLC periodically sent documents via electronic mail to employees with approved access, including Wang, that included information on deals they were considering, in the form of meeting agendas and meeting minutes.

19. In particular, according to information provided to the Commission staff by Morgan Stanley, Wang received minutes reflecting the project names for deals, detailed descriptions of the companies to be acquired, the amounts of the loans, and whether GLLC had approved the loans. Upon receiving meeting minutes reflecting that the loans had been approved, Wang knew that the deals were imminent.

20. Two of the deals the GLLC considered were Town and Country and Glenborough.

21. According to information provided to the Commission staff by Morgan Stanley, Wang also was granted access to a shared folder on Morgan Stanley's network drive called "Big loan," and to a subfolder called "Gazelle." Access to these folders was restricted and Wang needed permission to obtain access because the "Big loan" folder contained information about pending loans for acquisitions and projects.

22. The "Gazelle" subfolder contained information and analysis for the Genesis transaction.

23. Wang was granted access to these folders on October 26, 2006.

24. Commission records maintained by the Central Registration Depository show that Wang holds a Series 7, General Securities Representative License, and earned a score of 94 on the exam. Through my personal knowledge of the content of the exam, I know a thorough understanding of the securities industry is required to obtain a score that high.

## How the Trading Was Effected

25. On February 2, 2004, an online brokerage account at Scottrade, Inc. was opened in the name of "Zhiling Feng" ("Feng Scottrade Account"). There were only two deposits to the Feng Scottrade account: the first was the initial deposit of $40,000 to open the Feng Scottrade account in March 2004; and the second was a deposit of $50,000 in March 2005. Both deposits were made by check. Scottrade only possessed a copy of the first check, which was from a Bank of China bank account held in a New York, New York, branch by Chen and Wang.

26. In the account opening application, Feng was identified as living in Beijing, China, "retired," with an estimated net worth of $500,000 and an annual income of $10,000. The application stated that Feng had at least 8 years experience trading options and 10 years trading stocks.

27. On May 5, 2006, an online brokerage account at Interactive Brokers, LLC ("Interactive Brokers") was opened in the name of "Zhiling Feng" ("Feng Interactive Brokers Account").

28. Documents provided by Interactive Brokers show a facsimile number from which the account opening documents for the Feng Interactive Brokers Account were faxed to Interactive Brokers. Morgan Stanley has confirmed that the facsimile number on the Feng Interactive Brokers Account opening documents matches a fax machine on the floor where Wang works at Morgan Stanley.

29. In June 2006, the Feng Scottrade Account was liquidated, and $27,626 in cash and $107,275 in equities were transferred to the Feng Interactive Brokers Account. This was the only deposit made to the Feng Interactive account.

30. Interactive Brokers provided to the Commission staff information that showed the IP address of the computers that accessed the Feng Interactive Brokers Account. An IP address individually identifies a computer or network.

31. Many of the Interactive Brokers computer access logs show that the Feng Interactive Brokers Account was accessed from IP address 208.252.25.30. Internet searches of publicly available information revealed this to be an IP address for ING Furman Selz Asset Management, now known as ING Investment Management, Chen's employer.

32. Documents provided to the Commission staff by ING, including documents relating to Chen's employment with ING and documents evidencing Chen's accessing the Interactive Brokers' website from ING, show that Chen accessed Interactive Brokers' website on dates and times that correspond to the dates and times the Feng Interactive Brokers Account was accessed.

33. According to data received from Interactive Brokers and analyzed with data from publicly available sources, other computers used to access the Feng Interactive

7

Brokers Account have IP addresses that originate from New Jersey, from other locations in New York City, and from hotels such as the Palace in San Francisco and the Ritz Carlton in Naples, Florida.

34. The previously-referenced documents provided by ING include records of Chen's travel to San Francisco and the Naples area during the period that the Feng Interactive Brokers Account was accessed from there.

35. Documents which were provided to the Commission staff by Cablevision, an internet service provider associated with the New Jersey IP address, show that a computer connected to Chen's home in New Jersey was used to access the Feng Interactive Brokers Account.

### Investigation of Genesis Trading

36. Genesis' common stock trades on the NASDAQ Global Select Market under the ticker GHCI. Options on Genesis' common stock trade on the Chicago Board Options Exchange ("CBOE") and other exchanges under the ticker QGR.

37. Genesis is headquartered in Kennett Square, Pennsylvania, is one of the nation's largest long-term care providers with nursing centers and assisted living residences in 13 states. During the six months prior to January 16, 2006, trading volume in Genesis common stock averaged approximately 190,000 shares per day and the stock price traded from approximately $44 to $53.

38. On the morning of January 16, 2007, Genesis announced it had agreed to be acquired at a price of $63 per share.

39. Specifically, the information reported to the Commission that resulted in our investigation concerned higher than normal volume in the trading of options on Genesis stock shortly before the announcement.

40. Information provided by the CBOE indicated that a customer account in the name "Zhiling Feng" held at Interactive Brokers had traded 570 options contracts on the common stock of Genesis.

41. Interactive Brokers provided account statements and other documents related to the Feng Interactive Brokers Account.

42. The account statements provided show that the Feng Interactive Brokers Account purchased a total of 570 "call" option contracts on Genesis from December 29, 2006 through January 9, 2007 at a total cost of $47,705. All of the contracts were sold on January 16 and 17, 2007 for a total of $620,280. The approximate profit on these transactions totaled $572,575, for an approximate return on investment of 1,200%.

43. A call option contract gives the purchaser the right to purchase 100 shares of stock at the strike price of the option on or before the expiration date of the option.

44. The Feng Interactive Broker Account trades are suspect because, among other reasons, all but 74 of the call options contracts were purchased "out-of-the-money." A transaction is called "out-of-the-money" because the strike price of the call option is higher than the trading price of the underlying security at the time the contract was purchased. The option contract can only be exercised profitably when the trading price of the underlying security rises above the strike price of the call option.

45. The first purchase of options on Genesis stock made in the Feng Interactive Brokers Account was 30 call option contracts with a strike price of $55 per share and an expiration date of February 17, 2007. This purchase was made on December 29, 2006. This purchase conveyed the right to purchase 3,000 shares of Genesis stock at $55 per share on or before February 17, 2007.

46. Genesis stock traded no higher than $48.23 per share on December 29, 2006, the day that the Feng Interactive Brokers Account bought the options. Accordingly, if the stock price did not increase to $55 per share by February 17, 2007, the date of expiration, and the option was not sold prior to the expiration date, all of the money spent to purchase the option would be lost.

47. Account documents provided by Interactive Brokers also show that:

(a) on January 3, 4, 5 and 8, 2007, the Feng Interactive Brokers Account purchased a total of 356 call option contracts on Genesis stock with a strike price of $50 per share and an expiration date of January 20, 2007;

(b) on January 3 and 9, 2007, the Feng Interactive Brokers Account purchased a total of 110 call option contracts on Genesis stock with a strike price of $55 per share and an expiration date of January 20, 2007; and

(c) on January 4, 2007, a total of 74 call option contracts on Genesis stock with a strike price of $45 per share and an expiration date of January 20, 2007 were purchased in the Feng Interactive Brokers Account.

48. The trading is also suspect because options on Genesis stock trade relatively infrequently and the trades in the Feng account represented a large portion of the total number of Genesis options contracts traded.

49. Information provided by CBOE shows that, for the 10 trading day period immediately prior to the January 16, 2007 acquisition announcement,

(a) the 30 call option contracts with a strike price of $55 per share and an expiration date of February 17, 2007 purchased in the Feng Interactive Brokers Account represent 60% of all trading in that options series;

(b) the 74 call option contracts with a strike price of $45 per share and an expiration date of January 20, 2007 purchased in the Feng Interactive Brokers Account represent 89% of all trading in that options series;

(c) the 356 call option contracts with a strike price of $50 per share and an expiration date of January 20, 2007 purchased in the Feng Interactive Brokers Account represent 50% of all trading in that options series; and

(d) the 110 call option contracts with a strike price of $55 per share and an expiration date of January 20, 2007 purchased in the Feng Interactive Brokers Account represent 27% of all trading in that options series.

50. The Gazelle folder, to which Wang had access on the shared network drive, contained information showing the Principal Transaction Group's evaluation of Genesis.

51. Telephone records provided by Chen's employer, ING, which details Chen's calling activity, show multiple calls exchanged between Chen's line and Wang's work number at Morgan Stanley on December 29, 2006, the date of the Feng Interactive Brokers Account's first purchases of Genesis options contracts.

11

52. During the time period that directly correlates to the Genesis trading, every access to the Feng Interactive Brokers Account came from the ING IP address identified above.

53. The impact of the Genesis announcement on January 16, 2007 can be readily seen in the effect it had on the price of and volume of trading in Genesis common stock. On January 12, 2007, the last trading day before the announcement, Genesis common stock closed at $52.85 per share, on volume of trading of 352,674 shares traded. On January 16, 2007, the Genesis common stock closed at $61.26, on 3,592,250 shares traded. Thus the stock price increased by 15% and the volume increased by 919%.

### Trading In Glenborough Realty Trust

54. The Feng Interactive Brokers Account also traded in the common stock of Glenborough. Glenborough's common stock traded on the New York Stock Exchange under the ticker GLB.

55. Glenborough is headquartered in San Mateo, California, is a real estate investment trust, which is focused on owning high quality, multi-office properties concentrated in Washington, DC, California and Northern New Jersey. During the six months prior to August 21, 2006, trading volume in Glenborough common stock averaged approximately 270,000 shares per day and the stock price traded from approximately $18 to $24.

56. According to the account documents, on August 16 and 18, 2006, the Feng Interactive Brokers Account purchased 8,400 shares of Glenborough at an average price of $23.88 per share.

57. On August 21, 2006, before the opening of trading, Glenborough announced it had agreed to be acquired by Morgan Stanley Real Estate for $26 per share.

58. Volume in the trading of Glenborough on August 18, 2006 was 257,600 shares traded, with a closing price of $24.03. On the next trading day, which was August 21, 2006, trading volume was 1,777,800 shares traded, or an increase in volume of 590%. The closing price on August 21, 2006 was $25.97, reflecting an 8% increase from the prior close.

59. The next day, August 22, 2006, the Feng Interactive Brokers Account sold all of its Glenborough stock for a profit of $17,283.

60. Documents obtained from Morgan Stanley show Wang received notices by electronic mail related to Morgan Stanley's involvement with the Glenborough deal. On August 16, 2006, the very same day that the Feng Interactive Brokers Account began to purchase Glenborough stock, Wang received by electronic mail GLLC minutes reflecting that GLLC had approved a large loan to finance "Project Gridiron," the project name for Glenborough, but that the approval of one more person was required and receipt of that approval was anticipated after the GLLC meeting.

61. These GLLC minutes describe "Gridiron" as a "publicly-traded office REIT" and state that the loan "will be secured by 65 properties comprising 6.5mm SF and primarily located in CBD and suburban markets of Washington, DC, California, New Jersey, Massachusetts, Florida, and Colorado." The minutes further state that "[t]he total acquisition cost for Gridiron will be about $1,862mm based on a $27.00 share price, a 15.7% premium to the current stock price of $23.33."

62. Telephone record documents provided by Chen's employer, ING, detailing Chen's calling activity show several calls exchanged between his line and Wang's work number at Morgan Stanley on August 16, 2006.

63. IP address access logs for the Feng Interactive Brokers account show the account was accessed from ING multiple times on August 16, 2006, August 17, 2006, August 18, 2006, August 21, 2006, and August 22, 2006.

## Trading in Town and Country Trust

64. Documents obtained from Interactive Brokers show the assets that funded the Feng Interactive Brokers Account were transferred from Scottrade in June 2006. The documents show $27,626 in cash and $107,275 in securities was transferred.

65. Town and Country, headquartered in Baltimore, Maryland, is a real estate investment trust that owns and operates apartment communities in the Mid-Atlantic states and Florida. Its stock was traded on the New York Stock Exchange under the symbol "TCT." In the six months prior to the announcement on December 19, 2005 that a group led by Morgan Stanley had agreed to buy the company, its stock traded mostly in the $27 to $31 range with average volume of approximately 73,000 shares a day.

66. Documents provided to the Commission staff by Morgan Stanley show that on December 2, 2005, Wang received by electronic mail GLLC minutes reflecting that the GLLC approved a large loan to finance "Project Magazine," the project name for Town and Country), but that it required the approval of one additional individual, expected the following week.

14

67. These GLLC minutes describe "Magazine" as a "publicly-traded multifamily real estate investment trust," "self-administered and self-managed," and that "owns and operates a portfolio of multifamily properties in the Mid-Atlantic and Southeast." They further state that "the loan will be securitized by first mortgage lien on 39 predominantly Class B properties which include approximately 13,185 units."

68. Wang received additional correspondence by electronic mail on December 7, 2005 reflecting that the additional individual was expected to approve the loans on December 8, 2005.

69. The Scottrade records show the Feng Scottrade Account purchased a total of 3,000 shares of Town and Country on December 8 and 14, 2005.

70. On December 19, 2005, after the close of trading, Town and Country announced it had agreed to be acquired by Morgan Stanley Real Estate.

71. On December 19, 2005, Town and Country stock closed at $29.79, on volume of 46,500 shares traded; the next day, the first day of trading after the announcement, the stock closed at $33.75, on 1,895,700 shares traded. As compared to December 19, 2005, trading at the close on December 20, 2005 reflected an increase in volume of 3,977% and an increase in the price per share of 13%.

72. On December 23, 2005, the Feng Scottrade Account sold the all 3,000 shares of Town and Country for a profit of $10,930.

73. According to information from Morgan Stanley, on January 23, 2006, Wang received by electronic mail GLLC minutes reflecting that "[a]nother suitor has offered a higher price per share" for Magazine and that now Morgan Stanley Real Estate was proposing to commit more money to the deal.

74. On January 27, 2006, the Feng Scottrade Account bought another 2,000 shares of Town and Country.

75. On February 3, 2006, Wang received GLLC minutes by electronic mail reflecting that "GLLC approved increasing the loan amount based on a revised price of $40.00 per share."

76. During the period February 2 through 9, 2006, there were multiple public announcements that Morgan Stanley Real Estate was involved in a bidding war for Town and Country.

77. Between January 27 and February 9, 2006, Town and Country's stock price increased 19%.

78. On February 9, 2006, the Feng Scottrade Account sold the 2,000 shares of Town and Country for a profit of $10,460.

79. IP address access logs for the Feng Scottrade account show the account was accessed multiple times from the ING IP address during the period December 8, 2005 through February 9, 2006, the relevant the Town and Country trading period.

### Other Relevant Information

80. In response to investigative subpoenas served on Wang and Chen by the Commission staff requesting, among other things, documents that would show Wang and Chen controlled and effectively owned the Feng Interactive Brokers account, Wang and Chen asserted their Fifth Amendment privilege against self incrimination and refused to supply certain documents responsive to the subpoena.

81.     According to information provided by each of their employers, neither Chen nor Wang disclosed to their employers that they used or controlled the Feng Interactive Brokers Account or the Feng Scottrade Account.

82.     Chen was required by ING to disclose all brokerage accounts in which he could buy or sell securities and he was required to pre-clear all of his trading. Although Chen disclosed other accounts, he did not disclose the Feng Interactive Brokers Account or the Feng Scottrade Account.

83.     Similarly, Morgan Stanley required Wang to disclose any brokerage accounts in which she had an interest. Although Wang disclosed other accounts, she did not disclose the Feng Interactive Brokers Account or the Feng Scottrade Account.

84.     My review of documents related to the Feng Interactive Brokers Account show it had a total account value of $853,445 on April 30, 2007.

85.     Information obtained from Charles Schwab reveals an account held by Chen at Charles Schwab which had a total account value of $257,134 as of May 8, 2007.

86.     Information obtained from Morgan Stanley and from ING, reveals that Wang and Chen also have a bank account at JPMorgan Chase.

I make this declaration pursuant to 28 U.S.C. § 1746 and declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge, information and belief.

_____
Daniel L. Koster