DAVID SPEARS (DS-2720)
CHRISTOPHER W. DYSARD (CWD-0002)
Spears & Imes LLP
51 Madison Avenue
New York, New York 10010
Tel:  (212) 213-6996
Fax: (212) 213-0849

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES AND EXCHANGE COMMISSION,            :

             Plaintiff,            :

       v.            :

JENNIFER XUJIA WANG, and            :            07 Cv. 3715 (AKH)
RUBEN a/k/a RUOPIAN CHEN,

                         :

             Defendants,

             and

                         :

ZHILING FENG,

             Relief Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS'
MOTION TO MODIFY THE <u>EX PARTE</u> TEMPORARY
<u>RESTRAINING ORDER AND FOR EXPEDITED DISCOVERY</u>**

## PRELIMINARY STATEMENT

Defendants Jennifer Xujia Wang ("Wang") and Ruben a/k/a/ Ruopian Chen ("Chen") (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to: (1) modify the temporary restraining order freezing the Defendants' assets, issued <u>ex parte</u> by the Court on May 10, 2007 (the "Freeze Order"), and (2) order the Securities and Exchange Commission (the "SEC") to produce the documents requested in Defendants' First Set of Document Requests, dated May 11, 2007, by 10:00 a.m. on May 16, 2007, and to produce Staff Accountant Daniel L. Koster for deposition no later than May 18, 2007. As to the Freeze Order, Defendants seek to modify it so that it would apply only to the Feng account at Interactive Brokers, and not to any of the assets held in Defendants' respective names.

The SEC's sweeping *ex parte* motion rested on erroneous assertions regarding the risk that Defendants might attempt to leave the United States or dissipate assets. There is absolutely no evidence that Chen and Wang are flight risks or that they will seek to frustrate any potential judgment. To the contrary:

- Although Chen and Wang are former Chinese citizens, both were recently granted United States citizenship and forfeited their Chinese citizenship as a result.

- They are both under strict supervision due to a related criminal matter, pursuant to which they were arrested on May 10, 2007, as part of a coordinated effort between the United States Attorney's Office and the SEC. They have surrendered their American and Chinese passports, Chen is under house arrest, and Wang is subject to intensive pre-trial supervision.

- As the SEC recognizes, Wang has been on disability leave since February. She is in the 37th week of a high-risk pregnancy and is on bed rest, rendering any flight impossible.

2

- There is absolutely no evidence that Defendants have attempted to move any assets out of the reach of U.S. authorities, despite the fact that they have known about the government's investigation for three months and have been in regular contact, through their counsel, with the SEC regarding its investigation.

- The SEC's suggestion that Defendants have signaled an intention to flee by recently listing their coop apartment in Queens, New York is frivolous. Defendants first listed their apartment in July 2006, long before the SEC's investigation began, and even before much of the trading the SEC attacks.

Further, regarding the SEC's substantive allegations, the evidence presented by the SEC in support of its motion reflects critical weaknesses in its proof regarding defendants' purported securities law violations, especially those relating to trading in options of Genesis. In particular, the SEC's deliberately and unavoidably hazy factual allegations about the existence of non-public information regarding Genesis at Morgan, Stanley and Wang's access to this information are inadequate to support the drastic remedy of an asset freeze relating to the profits made from trades in Genesis – an asset freeze that runs not just to actual profits from Genesis in the account of relief defendant Feng, but also to every asset in the names of defendants, on the grounds that those assets will be necessary to pay penalties on the Genesis profits.

Under these circumstances, the draconian injunction and freeze order requested by the SEC is wholly improper. At the very least, this Court should modify the scope of the current Freeze Order to make it inapplicable to all of Defendants' own assets, thereby striking a more appropriate balance between the government's interest in freezing certain alleged trading proceeds pending the resolution of its case, and Defendants' need for access to their own assets on an unrestricted basis for living expenses and legal expenses.

Finally, in order to provide Defendants a fair opportunity to respond to the SEC's factual assertions in support of its injunction request, the Court should order the SEC to provide expedited discovery to Defendants. In particular, the Court should order the SEC to produce immediately the documents responsive to Defendants' First Set of Document Requests, and to produce Staff Accountant Daniel L. Koster for deposition by May 18, 2007.

## ARGUMENT

### I. THE FREEZE ORDER SHOULD BE MODIFIED TO ALLOW DEFENDANTS ACCESS TO ALL OF THEIR PRIVATE FUNDS

In order to obtain a preliminary injunction enjoining future securities law violations, the SEC must make a "clear showing" of a likelihood of success on the merits of its complaint alleging past violations and prove a "reasonable likelihood" of future violations absent the injunction. *See SEC v. Unifund SAL*, 910 F.2d 1028, 1037 (2d Cir. 1990). To obtain a preliminary injunction freezing a defendant's assets pending trial, the SEC must establish its *prima facie* case of securities fraud and "demonstrate that an asset freeze is needed in order to prevent [the defendant] from secreting or dissipating his assets." *SEC v. Margolin*, No. 92 Civ. 6307 (PKL), 1992 WL 279735, at *6 (S.D.N.Y. Sep. 30, 1992).

Contrary to these requirements, the SEC has presented no evidence that there is any risk Defendants have sought or will attempt to dissipate their assets, transfer them beyond the reach of United States authorities, or personally leave the United States. For these reasons, even assuming the SEC has put forward *prima facie* evidence of securities violations, the broad freeze sought in its *ex parte* TRO would be inappropriate. But worse, the SEC has <u>not</u> put forward *prima facie* evidence that the challenged trading in

4

Genesis violated the securities laws, and the paucity of the SEC's evidence relating to the Genesis trades highlights the need for this Court to restrict the SEC's requested injunction and proceed with discovery on an expedited basis.

A.    The Government Has Not Demonstrated Any Reasonable Risk of Flight or Dissipation of Assets

In *SEC v. Manor Nursing Centers, Inc.*, the Second Circuit recognized a district court's ability to grant a temporary freeze of a defendant's assets, but cautioned that such a freeze requires "particularly careful consideration." 458 F.2d 1082, 1105 (2d Cir. 1972). Because a freeze is designed to guarantee that sufficient assets will be available if ultimately needed to compensate public investors, a freeze is only appropriate where there is a risk that assets will be dissipated, and "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief." *Id.* at 1106; *accord SEC v. Margolin*, No. 92 Civ. 6307 (PKL), 1992 WL 279735, at *6 (S.D.N.Y. Sep. 30, 1992); *see also SEC v. Gonzalez de Castilla*, 145 F. Supp. 2d 402, 415 (S.D.N.Y. 2001) (holding that SEC must show that there is a concern defendants will "dissipate their assets or transfer them beyond the jurisdiction of the United States" without court action).

The SEC has not demonstrated any such need in this case and the harmful effects of a freeze on Defendants weighs heavily against its imposition. The government nakedly asserts that Defendants pose a flight risk, justifying a total freeze on all of their assets, because (1) they are Chinese citizens, who have family in China and (2) they "recently listed their home in Queens for sale and appear to be unemployed." See Memorandum of Law In Support of Plaintiff's Ex Parte Application for a Temporary Restraining Order, Preliminary Injunction, and Order Freezing Assets and Granting Other

Relief ("SEC Mem.") at 15, 25. First, contrary to the government's assertion, see SEC Mem. at 25, Chen and Wang are not citizens of China. *See* Declaration of Christopher Dysard dated May 15, 2007 ("Dysard Dec.") ¶ 3; Ex. 3. They became United States citizens on April 12, 2007. *See Id.* ¶ 2. Indeed, they went forward with the process to obtain citizenship notwithstanding that the grant of United States citizenship meant termination of their status as Chinese citizens. *Id.* ¶ 3, Ex. 3. These are not the actions of individuals who intend to flee the United States.

Second, the Defendants have not "recently" listed their home for sale. The Defendants listed their home for sale on July 12, 2006 well before any allegations in this case—and have been attempting to sell it since that time. *Id.* ¶ 5, Ex. 5.

Further, there is no present, reasonable risk that Defendants will flee the United States. Both Chen and Wang are under strict supervision in connection with a related criminal matter. They have surrendered their American and Chinese passports. *See See id.* ¶¶ 2, 4. Chen is also under house arrest, subject to electronic monitoring, and Wang is under the strict supervision of Pretrial Services. *See id.* ¶ 4. In connection with the criminal charges against them, each has also posted a two-million-dollar bond, with two co-signers on the bond, and have been required to post hundreds of thousands of dollars in personal assets to secure a personal recognizance bond. *Id.*

Wang's current, serious medical condition is a further reason Defendants are tied to the United States. Wang is eight months' pregnant and suffers from a serious condition known as placenta previa, in which the birth canal is blocked by the placenta. *See id.* ¶ 6, Ex. 6. The potential dangers associated with this condition include

hemorrhaging and death, and Wang has accordingly been under a doctor's supervision and on bedrest. *See id.* ¶ 6, Exs. 6 & 7.

Further, the SEC has conveniently ignored the fact that Wang and Chen have known about the SEC's investigation for three months – since February 13, 2007, when they received SEC subpoenas. Since that time, they have been represented by counsel and counsel has been in constant contact with the SEC on behalf of Defendants, including producing documents. There is not a scintilla of evidence suggesting that Defendants have in that time attempted either to dispose of any of their assets or leave the country. SEC Memo at 25. Indeed, the SEC very recently gave an express indication to defendants that it had no concern that the assets in the Feng account might be transferred out of the United States during its investigation, which preceded the issuance of the Freeze Order by at least three months. The assets in the Feng Interactive accounts total more than $800,000, as the government notes. Specifically, on April 14, 2007, to provide assurances regarding dissipation of assets to the government, counsel e-mailed to the SEC a draft letter from Feng to Interactive directing the freeze of those accounts. Dysard Dec. ¶ 7, Ex. 8. In response, the SEC informed counsel that the government had adequate comfort that its interests were being protected without more. See id. Yet only one month later the SEC sought and obtained a far broader order, covering not only the assets in the Interactive accounts at issue, but all of Defendants' assets, including their private bank accounts.

There is also no evidence that Defendants will seek to frustrate any potential judgment against them, and there is no evidence that the Defendants have sought to dissipate their assets. Although the SEC makes a vague reference to continued trading in

the Interactive accounts, *see* SEC mem. at 23, that assertion is not supported by any factual submission; more importantly, there is no allegation – and certainly no proof – that the funds in the accounts have been depleted in any way.  Similarly specious is the government's reliance on the mere fact that without a restraining order the Defendants will have access to their trading accounts, see SEC Mem. at 25.  The Defendants have had continuous access to those accounts in the three months since they first learned of the SEC's investigation, and the government has offered no evidence that the Defendants have  moved or attempted to move any of the assets contained in them.  Under these circumstances, the government simply has not established – and cannot establish -- a basis for the draconian freeze order that has been imposed upon them.  *Compare SEC v. Sendo*, No. 91 Civ. 4408 (RO), 1991 WL 208515, at *2 (S.D.N.Y. Jul. 18, 1991) (granting freeze due to "great risk that assets ... may be dissipated or secreted without intervention").

Moreover, even if this Court found some limited risk that assets might be dissipated, it must weigh that risk against the potential harmful effects of ordering a freeze.  *See, e.g.*, *SEC v. Zubkis*, No. 97 Civ. 8086 (JGK), 2003 WL 22118978, at *5 (S.D.N.Y. Sep. 11, 2003); *see also SEC v. Lybrand*, No. 00 Civ. 1387 (SHS), 2000 WL 913894, at *12 (S.D.N.Y. Jul. 6, 2000) (rejecting broad freeze that risked bankrupting the defendants).  The *ex parte* freeze order here does not "merely preserve the *status quo*," as the government asserts, see SEC Mem. at 26.  To the contrary, it blocks access by Defendants to all of their assets, with substantial implications for their day-to-day lives, particularly in light of Wang's  high-risk pregnancy and the imminent birth of their child. As such, it imposes a stringent burden upon Defendants with no corresponding showing

that the burden imposed is necessary or warranted under the circumstances. In the absence of a showing that a freeze is necessary to prevent dissipation of assets, it should be narrowly circumscribed. The government's justification for the requested freeze order – that it has accused Chen and Wang of violating the securities laws -- is simply not enough.

    B.   The Limited Agreement Between the SEC and Defendants is Not Sufficient to Resolve These Problems Pending Resolution of this Case

       Finally, contrary to the SEC's assertion, see Memorandum of Law In Support of Motion of Plaintiff Securities and Exchange Commission to Extend Temporary Restraining Order, and Order Freezing Assets and Granting Other Relief and to Reschedule Preliminary Injunction Hearing ("SEC Extension Mem.") at 3-4, Defendants' interests here have not been satisfied by the stipulation between the parties authorizing the provision of $53,000 to Defendants.

       Under the terms of that stipulation, the SEC has only agreed in principle to the potential availability of additional funds, "pending provision by Defendants to the Commission of evidence satisfactory to the Commission demonstrating those expenses." SEC Extension Mem. at 3. Given the absence of any showing by the SEC of a risk of dissipation of assets, and in light of the compelling need Defendants will have for additional funds due to Wang's pregnancy and the imminent birth of the couple's child, there is no basis for requiring Defendants to bear the onus and uncertainty of having to make a particularized showing to the SEC each time they are in need of basic living expenses. The government has simply shown no basis for imposing upon them such an onerous burden.

C.  The SEC's Proof As To Genesis Is Defective

The profit realized through the Genesis options trading in the Interactive Brokers account represents approximately 94% of the purported "proceeds of the fraud" in this case, SEC. Mem. at 15,[1] and provides the principal justification for the wholesale asset freeze, of unlimited duration, ordered by the Court.  Given the crippling burden the freeze imposes on Chen and Wang, the law requires the justification for such an extreme measure to be correspondingly more compelling.  *See Sec. & Exch. Comm'n v. Unifund SAL*, 910 F.2d 1028, 1037 (2d Cir. 1990) (citing "the basic principle that burdensome forms of interim relief require substantial justification"); *see also Sec. & Exch. Comm'n v. Gonzalez de Castilla*, 145 F. Supp. 2d 402, 415 (S.D.N.Y. 2001) ("Like any private litigant, the SEC's burden of proof rises in relation to the hardship the injunction would create for the defendants.").  Here, however, the allegation purportedly justifying the complete asset freeze – that Wang and Chen traded on material nonpublic information regarding Genesis – is truly meager.  In particular, the SEC has failed to adequately allege either that Morgan Stanley had possession of material non-public information regarding a Genesis takeover or that Mr. Wang had such information.

As to Morgan Stanley's possession of such information, the SEC alleges only that "[t]he 'Gazelle' subfolder [apparently a set of electronic files] contained information and analysis for the Genesis transaction."  (Koster Decl. ¶ 22).  The SEC gives no factual detail at all as to what it means by "information and analysis," and the SEC does not provide any factual basis for inferring that Morgan Stanley had nonpublic information that Genesis would be taken over.  The SEC's silence on this point is deafening.

---

[1] The approximate profit from the Genesis options trading is alleged to be $572,575, (SEC Mem. at 10, out of total profits of $611,248 from trading in Genesis, Glenborough, and Town and Country, (SEC Mem. at 10, 13, 14.

10

Specifically, the SEC does not say when the "Gazelle" subfolder (where the Genesis information purportedly resided) was created and placed within the "Big loan" shared folder. The SEC does not say what "information and analysis for the Genesis transaction" (Pl. Mem. at 6; *see also* Compl. ¶ 21) the "Gazelle" subfolder contained. Without such detailed allegations, the SEC fails to establish that Morgan, Stanley had material nonpublic information during the relevant period.

The SEC merely alleges that Wang "had access" (Compl ¶¶ 20, 35; Pl. Mem. at 9, 18; Koster Decl. ¶ 50) or "was granted access" (Comp. ¶ 22; Pl. Mem. at 6; Koster Decl. ¶¶ 21, 23) to the "Big loan" folder and "Gazelle" subfolder on October 26, 2006 – more than two months before the first day of Genesis options trading in the Interactive Brokers account.[2] From this slender reed hangs the SEC's allegation that Wang possessed insider information regarding Genesis. The SEC's brief provides no additional detail. Critically, the SEC does not say when Wang allegedly accessed the "Gazelle" subfolder. Accordingly, regarding Genesis, there is absolutely no cited support for the SEC's summary statement that the "[t]he trading in the Acquirees occurred either on the same day or shortly after Wang received or acquired the information." (Compl. at 19.) As the Court stated in SEC v. <u>Truong</u>, 98 F. Supp.2d 1086 (N.D. Cal. 2000), "[s]uspicions trading by itself cannot suffice to warrant an inference that an [individual] traded on the basis of material non-public information," *id.* at 1097, and "Courts stress that the SEC may not base insider trading actions on strained inferences and speculation," *id.* at 1098. *See SEC v. Gonzalez de Castilla, supra,* 184 F. Supp.2d at 376-77.

_____

[2] In a throwaway line in the Argument section of its supporting brief, the SEC states that Wang "had access to the Principal Transaction Group's employees who evaluated the Genesis financing by virtue of her role supporting that Group." (SEC Mem. at 18.) Nowhere, however, does the SEC identify these employees or allege that Wang actually had any conversations with them about Genesis.

Similarly, the fact that Ms. Wang and Mr. Chen spoke on the telephone at the time when the Genesis trades occurred has no evidentiary value. If the SEC were to examine the phone records more broadly, as they probably have, they would know that the Defendants spoke on the phone continually. Likewise, while the SEC seeks to make much of their claim that the trades in Genesis options originated from Mr. Chen, they fail to tell the Court that there was an enormous volume of trades in the Feng accounts at Scottrade and Interactive over the years those accounts were open, including the purchase of thousands of options of various companies, and that Mr. Chen also assisted Ms. Feng in those trades. The SEC's efforts to isolate long-running patterns of behavior into exclusive little pockets of time in an effort to made such behavior appear to be wrongful undermines their credibility and their case for an asset freeze.

To obtain a preliminary injunction freezing defendants' assets, the SEC must demonstrate "a basis to infer that [the defendants] traded on inside information." *Gonzalez de Castilla*, 145 F. Supp. 2d at 415. The mere allegation that Wang had "access" to a subfolder (among an unspecified amount of computer folders, subfolders, and files) does not provide the basis to infer that Wang even possessed inside information regarding Genesis – much less that Chen and Wang traded on such information. Accordingly, at the very least, the wholesale asset freeze should be substantially modified to exclude all of Defendants' private accounts from the restraining order.

## II. THE COURT SHOULD ORDER EXPEDITED DISCOVERY FROM THE SEC

Under the Federal Rules of Civil Procedure, this Court has the authority to grant expedited discovery. *See* Fed. R. Civ. P. 26(d). In determining whether there is good cause for such discovery, a court should consider the whole record and the

reasonableness of the discovery request in light of the surrounding circumstances. *See, e.g. Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005); *Standard Inv. Chartered, Inc. v. NASD, Inc.*, No. 07 Civ. 22014 (SWK), 2007 WL 1121734, at *5 (S.D.N.Y. Apr. 11, 2007).

Defendants request extremely limited discovery at this point. They seek to depose SEC Staff Accountant Daniel L. Koster, and have served the SEC with Defendants' First Request for Documents, a minimal number of requests focused on the SEC's allegations regarding Genesis. As explained in greater detail above, the proceeds from alleged improper trading in Genesis constitute the bulk of the assets sought by the SEC, yet the SEC has presented virtually no evidence that Defendants possessed inside information regarding Genesis. Thus, discovery on this matter is critical in order to allow Defendants to adequately prepare for the upcoming preliminary injunction hearing. In addition, because the First Request seeks specific, limited information, it will not be burdensome for the SEC to respond in an accelerated fashion. Accordingly, Defendants ask that the Court order the SEC to make Daniel Koster available for deposition by May 18, 2007, and respond to Defendants' First Request for Documents by the hearing date of May 16, 2007.

## CONCLUSION

The Court should modify the *ex parte* temporary restraining order entered on May

10, 2007, and order expedited discovery from the SEC.

Dated: New York, New York
      May 15, 2007

Respectfully submitted,

David Spears
Christopher W. Dysard
Attorneys for Defendants
Spears & Imes LLP
51 Madison Avenue
New York, New York  10010
(212) 213-6991

14